UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | ) | |
|---|---|---|
| TONN AND BLANK CONSTRUCTION, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:12-CV-325-JD |
| SYLVIA MATHEWS BURWELL,[1] *et al.*, | ) ) ) | |
| Defendants. | ) | |

## FINAL JUDGMENT AND ORDER

In light of the United States Supreme Court's ruling in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014), the parties agree [DE 52] that judgment should be entered in favor of Plaintiff Tonn and Blank Construction, LLC (T&B) and against Defendants Sylvia Mathews Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services; Thomas Perez, in his official capacity as Secretary of the United States Department of Labor; Jacob Lew, in his official capacity as Secretary of the United States Department of the Treasury; the United States Department of Health and Human Services; the United States Department of Labor; and the United States Department of the Treasury (Defendants) on T&B's claim under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.* (RFRA). The parties also agree that a permanent injunction should be entered,

---

[1] Sylvia Mathews Burwell was automatically substituted for Kathleen Sebelius, Thomas Perez was automatically substituted for Hilda Solis, and Jacob Lew was automatically substituted for Timothy Geithner, as named defendants when they became the United States Secretaries of Health and Human Services, Labor, and Treasury, respectively. *See* Fed. R. Civ. P. 25(d).

however, they disagree about the scope of that permanent injunction[2] [DE 52].

While the history of the contraception mandate has now been recounted in numerous judicial opinions, the Court briefly notes the background of its promulgation given its relevancy to ruling on the requested permanent injunction.

*The Contraception Mandate*

Under the Patient Protection and Affordable Care Act (ACA), employment-based group health plans covered by the Employee Retirement Income Security Act must provide certain types of preventive health services. *See* 42 U.S.C. § 300gg–13; 29 U.S.C. § 1185d. One provision mandates coverage, without cost-sharing by plan participants or beneficiaries, of "preventive care and screenings" for women "as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [HRSA]." 42 U.S.C. § 300gg–13(a)(4). The HRSA, an agency of the U.S. Department of Health and Human Services (HHS), then delegated the task of developing appropriate preventive-services guidelines to the Institute of Medicine (IOM), an arm of the National Academy of Sciences funded by Congress to

---

[2]During the pendency of the case, the Court entered an agreed-upon preliminary injunction [DE 43]. T&B argues [DE 54] that the scope of the permanent injunction should mirror the imposed preliminary injunction, which states:
> [I]t is hereby ORDERED, ADJUDGED, and DECREED that Defendants, their agents, servants, employees, representatives, and all persons in active concert or participation with them are hereby ENJOINED, . . . from:
> 1. Applying or enforcing against T&B or its employee health plan or its insurer the requirements set out in 42 U.S.C. § 300gg-13(a)(4) and 45 C.F.R. § 147.130(a)(1)(iv), corresponding Guidelines, and corresponding press releases to provide coverage for FDA approved contraceptive methods, abortion-inducing drugs, sterilization procedures, and related patient education and counseling.
> 2. Applying to T&B or its employee health plan the definition or process under 45 C.F.R. § 147.130(a)(1)(iv)(B) for defining a "religious employer" and determining whether an employer is an exempt "religious employer."
>
> The Court FURTHER ORDERS as follows:
> 3. T&B shall not be required to post bond.

[DE 43 at 2].

2

provide the government with independent expert advice on matters of public health.  After reviewing the type of preventive services necessary for women's health and well-being, the IOM recommended that the following preventive services be required for coverage:  annual well-woman visits; screening for gestational diabetes and breast-feeding support, supplies, and counseling; human papillomavirus screening; screening and counseling for sexually transmitted infections and human immune-deficiency virus; screening and counseling for interpersonal and domestic violence; and contraceptive education, methods, and services so that women can better avoid unwanted pregnancies and space their pregnancies to promote optimal birth outcomes. *See* IOM, Clinical Preventive Services for Women: Closing the Gaps, http://www.iom.edu/Reports/ 2011/Clinical-Preventive-Services-for-Women-Closing-the-Gaps.aspx (last visited Nov. 4, 2014).  Based on the IOM's recommendations, the HRSA issued comprehensive guidelines requiring coverage of (among other things) "[a]ll Food and Drug Administration [FDA] approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." HRSA, Women's Preventive Services Guidelines: Affordable Care Act Expands Prevention Coverage for Women's Health and Well–Being, http://www.hrsa.gov/womensguidelines/ (last visited Nov. 4, 2014).  These include hormonal methods such as oral contraceptives (the pill), implants and injections, barrier methods, intrauterine devices, permanent surgical methods, and emergency oral contraceptives (Plan B and Ella).[3] *See* FDA, Birth Control: Medicines To Help You, http://www.fda.gov/ForConsumers/ ByAudience/ForWomen/FreePublications/ucm313215.htm (lasted visited Nov. 4, 2014). Thereafter, HHS, the Department of Labor, and the Department of Treasury promulgated

---

[3] As the government points out, the list of FDA approved contraceptive methods does not explicitly include "abortion inducing drugs."

regulations requiring group health plans to include coverage of the contraceptive services recommended in the HRSA guidelines (hereinafter "contraceptive coverage requirements"). 45 C.F.R. § 147.130(a)(1)(iv) (2013) (HHS); 29 C.F.R. § 2590.715-2713(a)(1)(iv) (2013) (Labor); 26 C.F.R. § 54.9815-2713(a)(1)(iv) (2013) (Treasury). The contraceptive coverage requirements were made effective in the first plan year on or after August 1, 2012, *see* 45 C.F.R. § 147.130(b)(1), subject to a temporary safe harbor and certain exemptions.

In relevant part, a revised definition of "religious employer" exempted organizations from the contraceptive coverage requirements that are organized and operated as nonprofit entities and referred to in section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended. 78 Fed. Reg. 39,874 (codified at 45 C.F.R. § 147.131(a)). The groups that are "refer[red] to in section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code," are "churches, their integrated auxiliaries, and conventions or associations of churches" and "the exclusively religious activities of any religious order." 26 U.S.C. § 6033(a)(3)(A)(i), (iii). The 2013 final rules' amendments to the religious employer exemption applied to group health plans and group health insurance issuers for plan years that began on or after August 1, 2013. *See id.* at 39,871. The 2013 final rules also included an "accommodation" regarding the contraceptive coverage requirements for group health plans, as well as student health plans, established or maintained by "eligible organizations." 78 Fed. Reg. 39,874–80; 45 C.F.R. § 147.131(b)-(f). In relevant part, an "eligible organization" had to be organized and operated as a nonprofit entity that held itself out as a religious organization and opposed providing coverage for some or all of any of the contraceptive services required to be covered on account of religious objections. 45 C.F.R. § 147.131(b); *see also* 78 Fed. Reg. 39,874-75. An eligible organization is not required "to

4

contract, arrange, pay, or refer for contraceptive coverage" to which it has religious objections. 78 Fed. Reg. 39,874. To be relieved of the obligations that otherwise apply to non-grandfathered, nonexempt employers, an eligible organization had to complete a self certification form, certifying that it is an eligible organization, sign the form, and provide a copy of that self-certification to its issuer or third party administrator (TPA).[4] § 147.131(b)(4).

A noncomplying employer who does not meet an exemption faces large fines, specifically, $2,000 per year per full time employee (less 30 employees) for not providing insurance meeting the coverage requirements, 26 U.S.C. § 4980H(c), or $100 per day per employee for providing insurance that excludes the required contraceptive coverage, 26 U.S.C. § 4980D, and faces the risk of other enforcement actions.

By T&B's own admission [DE 1; DE 5], as a for-profit limited liability company and affiliate of the faith-based Franciscan Alliance, it does not meet any of the current exemptions, nor does it meet the "accommodation" created for nonprofit religiously affiliated employers. Thus, T&B, filed this lawsuit contending in pertinent part that the contraceptive coverage requirements violated the sincerely held religious beliefs of T&B under RFRA.

T&B and the Defendants agree [DE 52] that the United States Supreme Court's recent ruling in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014), entitles T&B to an entry of judgment against Defendants on T&B's RFRA claim and to the issuance of a permanent

---

[4]In the case of an organization with an insured group health insurance issuer, upon receipt of the self certification, the organization's health insurance issuer must provide separate payments to plan participants and beneficiaries for contraceptive services without cost sharing, premium, fee, or other charge to plan participants or beneficiaries, or to the eligible organization or it's plan. § 147.131(c). In the case of an organization with a self-insured group health plan, upon receipt of the self certification, the organization's TPA is designated as plan administrator and claims administrator for purposes of providing or arranging separate payments for contraceptive services without cost sharing, premium, fee, or other charge to plan participants or beneficiaries, or to the eligible organization or it's plan. 78 Fed. Reg. 39,893 (to be codified in 26 C.F.R. § 54.9815-2713A(b)(2)).

injunction. In *Burwell*, the Supreme Court determined that the contraceptive coverage requirements born of the ACA's requirement for preventative care and screening for women without cost-sharing violated closely held for-profit corporations' sincerely held religious beliefs in contradiction to RFRA. In so holding, the Supreme Court assumed that the interest in guaranteeing cost-free access to the challenged contraceptive methods was compelling within the meaning of RFRA, but determined that its least-restrictive-means standard had not been satisfied. *Id*. at 2780. While not deciding whether the certification accommodation provided for nonprofit "eligible organizations" complied with RFRA for purposes of all religious claims, the Supreme Court reasoned that the certification accommodation demonstrated that the government could in fact accommodate the interest of for-profit employers in a manner less restrictive than requiring for-profit employers to fund contraceptive methods that violate their religious beliefs. *Id*. at 2782.

And days later, in *Wheaton College v. Burwell,* 134 S.Ct. 2806 (2014), the United States Supreme Court enjoined the government from requiring Wheaton College, a religious organization, from even having to file the self-certification form, reasoning that Wheaton College could merely notify the government of its beliefs. *See also, Little Sisters of the Poor v. Sebelius*, 134 S.Ct. 1022 (2014).

As a result of these judicial determinations, an interim final rule issued indicating an "eligible organization" may simply inform the HHS in writing of its religious objection, and at that point HHS and the Department of Labor will inform the insurer or TPA of its obligation to cover contraceptives under the ACA. *See* HHS.gov, Administration takes steps to ensure women's continued access to contraception coverage, while respecting religious-based

6

objections, http://www.hhs.gov/news/press/2014pres/08/20140822a.html (lasted visited Nov. 5, 2014). In addition, a proposed rule would also allow closely held for-profit organizations to qualify as "eligible organizations," and thus, claim the same accommodation as nonprofit religious organizations. *See id.*; *see also*, 79 Fed. Reg. 51,118.

*The Permanent Injunction*

Given that the contraceptive coverage requirements are in a state of flux, T&B does not want the permanent injunction to prevent it from challenging changes made to the current contraceptive coverage requirements in a new lawsuit, and the Defendants do not want to be prevented from requiring T&B's compliance with any future amendments designed to accommodate plaintiff's religious beliefs. Although T&B seemingly wants the Court to enjoin *any future* regulatory scheme requiring provision of religiously objectionable contraceptive services under the ACA, this lawsuit was only about the regulations in existence when the United States Supreme Court rendered the *Hobby Lobby* decision on June 30, 2014, whereby for-profit employers were essentially required to fund contraceptive methods. Furthermore, even the Supreme Court explicitly declined to determine whether the certification accommodation provided for nonprofit "eligible organizations" complied with RFRA for purposes of all religious claims. *Hobby Lobby Stores, Inc.*, 134 S.Ct. at 2782.

Thus, the permanent injunction will only enjoin the contraceptive coverage requirements as they existed when the *Hobby Lobby* decision was rendered, and it will not apply to pending legislation or laws that may or may not be enacted. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) (indicating that courts have no authority to offer "an opinion advising what the law would be upon a hypothetical set of facts."); *see also* Fed. R. Civ. P. 65(d)(1) (requiring

7

every order of injunction to state its terms specifically and describe in reasonable detail the acts restrained).

The government also objects to the permanent injunction's referencing "abortion-inducing drugs," because the contraceptive coverage requirement does not speak of abortion-inducing drugs, rather it involves coverage for "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education counseling for all women with reproductive capacity." 77 Fed. Reg. 8725 (Feb. 15, 2012). T&B acknowledges that this was the language of the rule that was adopted in February 2012, which became effective for the first plan year on or after August 1, 2012 [DE 54 at 3]. As a result, the language of the permanent injunction will reflect the language of the rule, given that the current regulations require coverage for these particular contraceptive services.

Lastly, the government indicates that the permanent injunction should not reference the "religious employer" exemption, since by its own terms, the exemption does not apply to the plaintiff. The government is correct. In fact, T&B expressly admitted that the religious employer exemption did not apply to it [DE 1; DE 5]. As a result of its admitted non-application, the permanent injunction will not mention the religious employer exemption.

Accordingly, in light of the United States Supreme Court's ruling in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014), and by agreement of the parties, it is hereby ORDERED, ADJUDGED, and DECREED that judgment is entered in favor of Plaintiff T&B and against Defendants on T&B's claim under RFRA.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED consistent with Fed. R. Civ. P. 65, that Defendants, their agents, servants, employees, representatives, and all persons in

active concert or participation with them are hereby PERMANENTLY ENJOINED from:

1. Applying or enforcing the contraceptive coverage requirements for FDA approved contraceptive methods, sterilization procedures, and related patient education and counseling objected to by plaintiff on religious grounds as imposed by the ACA, 42 U.S.C. § 300gg-13(a)(4), <u>and</u> implemented by regulations in existence as of June 30, 2014, including 45 C.F.R. § 147.130(a)(1)(iv) (2013) (HHS), 29 C.F.R. § 2590.715-2713(a)(1)(iv) (2013) (Labor), 26 C.F.R. § 54.9815-2713(a)(1)(iv) (2013) (Treasury); and

2. Applying or enforcing any penalties, fines, or assessments for noncompliance with the contraceptive coverage requirements identified in paragraph (1), including those found in 26 U.S.C. § 4980D and 29 U.S.C. §§ 1132 and 1185d; and

3. From taking any other actions based on noncompliance with the contraceptive coverage requirements identified in paragraph (1)

against plaintiff, its employee health plan(s), the group health coverage provided in connection with such plan(s), and/or plaintiff's health insurance issuers and/or third-party administrators with respect to plaintiff's health plan(s).

This injunction does not apply with respect to any changes in statute or regulation that are enacted or take effect after this date.

Given the agreement of the parties, no bond is ordered.

IT IS FURTHER ORDERED that counsel shall confer prior to December 5, 2014 and attempt to reach an agreement on fees and costs. Any petition by T&B for attorneys' fees or costs shall be filed on or before December 19, 2014. Any response or opposition to such petition shall be filed on or before January 5, 2015.

The remaining claims of T&B are dismissed without prejudice and the Court shall retain jurisdiction to enforce this Final Judgment and Order.

SO ORDERED.

ENTERED: November 6, 2014

      /s/ JON E. DEGUILIO
Judge
United States District Court